UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                    CASE NO.

**KARYL PAXTON DESIGN, INC.**                                                     **13-13478**
                                                                                                          SECTION A
DEBTOR                                                                                          CHAPTER 11

## REASONS FOR DECISION

On January 9, 2014, the Court heard the Motion for Turnover[1] filed by Karyl Paxton Design, Inc. ("KPD"). KPD seeks turnover of property and funds seized by Marlin N. Gusman, Sheriff of Orleans Parish ("the Sheriff"). The parties were ordered to file simultaneous briefs by January 24, 2014, and reply briefs by January 31, 2014. Upon the submission of briefs, the matter was taken under advisement.

**I. Findings of Fact**

On June 1, 2005, KPD entered into a contract ("the Savoy Contract") with Progressive Lighting, Inc. d/b/a Savoy House ("Savoy") whereby KPD would design lighting and grant Savoy the license to use and produce lighting with KPD's designs. In return, KPD would be granted a royalty on sales of products it designed.[2] Royalties were calculated on a monthly basis and paid by wire transfer no later than the seventh of the following month.[3] The Savoy Contract provides that royalties are "deemed earned upon the sale of the Product."[4]

---

[1] Case 13-13478, P-27.

[2] Exh. 4.

[3] The Savoy Contract provides for annual payment of royalties. Exh. 4, p. 6. However, as stated by Savoy in its Answers to the Garnishment Interrogatories, the practice of the parties was monthly payment by the seventh of the following month. Exh. 5, p. 2.

[4] Exh. 4, Savoy Contract, p. 7.

On April 16, 2011, Christopher J. Sacco ("Sacco") obtained a money judgment against KPD, Karyl Paxton, and Karyl Paxton Design Studio, L.L.C. in Orleans Parish Civil District Court in the principal amount of $1,153.673.[5] The ruling was affirmed on appeal by the Louisiana Fourth Circuit Court of Appeal.

On September 16, 2013, Sacco filed a Petition for Garnishment, Interrogatories and Order against Karyl Paxton, Karyl Paxton Design Studio, L.L.C., and KPD in Civil District Court for the Parish of Orleans, case no. 2004-0466.[6] Also on September 16, 2013, the Sheriff signed a Notice of Seizure addressed to Savoy which provides:

> PLEASE TAKE NOTICE, that by virtue of a Writ of FIERI FACIAS issued in the above mentioned suit, I seize in your hands, all Goods, Lands, Tenements, Rights, and Credits, Moneys, Effects, Bills of Exchange, Promissory Notes, or property of any kind which you may now or hereafter have in your possession or under your control belonging to defendant.[7]

A Garnishment Citation ("Garnishment") was also issued on Savoy, which provides:

> YOU ARE HEREBY CITED, to declare on oath, what property belonging to the Defendant in this case yo have in your possession, or in what sum you are indebted to said Defendant, and also, to answer in writing, under oath, the interrogatories annexed to the *supplemental* petition of which a copy accompanies this citation, and deliver your answer to the same, ...[8]

At the hearing on the Motion for Turnover, counsel for KPD admitted that the Notice of Seizure and Garnishment Citation were served on KPD on September 18, 2014.

---

[5] *See* P-40, p. 2.

[6] Exh. 1.

[7] *Id.*

[8] *Id.*

2

On October 24, 2013, Sacco filed a Motion to Traverse Garnishment Answers,[9] and on December 13, 2014, the Court entered a Judgment on the Motion to Traverse Garnishment Interrogatories[10] which provides "that the seizure filed against [Savoy] is continuing." It also provides:

> [Savoy] shall, pursuant to the seizure, pay to the Sheriff of Orleans Parish all sums due to [KPD] from September 1, 2013 forward, until the seizure is released. Payment of all sums withheld through November 30, 2013 in the amount of $76,552.13[11] shall be paid immediately to the Sheriff of Orleans Parish. All future sums due to [KPD] shall be paid at least monthly to the Sheriff of Orleans Parish on or before the 7th of each month beginning January 7, 2014 and continue until the seizure is released. ...[12]

KPD appealed the Judgment on the Motion to Traverse Garnishment Interrogatories to the Louisiana Fourth Circuit Court of Appeal arguing that the seizure is not continuing. The appeal is still pending.[13]

Pursuant to the Garnishment, Savoy paid $76,552.13 to the Orleans Parish Sheriff by check dated December 20, 2013.[14]

October 22, 2013, pursuant to the Writ of Fieri Facias ("Writ of Fifa"), movables of KPD were seized as well as the nonexempt movables of Paxton.

---

[9] Exh. 2.

[10] Exh. 3.

[11] The Motion for Turnover provides that the $76,552.13 is for payment on the following invoices: (1) invoice dated 9/30/13 in the amount of $27,674.48; (2) invoice dated 10/31/13 in the amount of $28,178.22; and (3) invoice dated 12/4/13 in the amount of $20,699.43. P-27.

[12] *Id.*

[13] Case 2013-C-1673, Court of Appeal, Fourth Circuit, State of Louisiana.

[14] Exh. 7.

On December 20, 2013, KPD filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On December 27, 2013, Karyl Pierce Paxton ("Paxton"), principal of KPD, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The parties stipulated that the seizure of the movables was within the ninety day preference period, and Sacco agreed to release the movables seized in KPD or Paxton's possession.

KPD filed the Motion for Turnover seeking the return of all funds and property seized pursuant to the Writ of Fifa and Garnishment. After the hearing on January 9, 2014, the Court entered an Interim Order (1) taking the matter under advisement; (2) lifting the automatic stay so that Sacco could oppose the appeal of the Judgment on the Motion to Traverse Garnishment Interrogatories; (3) ordering that, until a final decision is rendered, Savoy make all payments that become due postpetition directly to KPD; (4) that KPD's counsel deposit any money received from Savoy into its trust account; and (5) that the Sheriff retain possession of and not negotiate any check received pursuant to the Garnishment.[15]

## II. Law and Analysis

### A. Turnover

KPD's Motion for Turnover was brought pursuant to section 542(a) which provides that an entity in possession, custody, or control of estate property must turn it over to the trustee or debtor-in-possession. Estate property includes property that was seized prepetition.[16] All amounts seized

---

[15] P-53.

[16] *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309 (1983) (Property seized by the I.R.S. prepetition that had not yet been sold at tax sale was property of the estate that must be turned over to the debtor-in-possession pursuant to section 542(a)).

by the Sheriff pursuant to Sacco's Writ of Fifa and Garnishment are property of the bankruptcy estate which must be turned over. However, if Sacco has a valid lien on KPD's property, he is entitled to adequate protection.[17]

### B. Validity of the Lien

The Garnishment was served on KPD more than ninety days prior to the petition date, so it was not within the preference period.[18] Sacco maintains that he seized KPD's stream of income from the Savoy Contract because the stream of income is held by Savoy. For this reason, Sacco alleges that he is entitled to a security interest in all royalties as they come due under the Savoy Contract.

A judgment creditor is entitled to garnish pursuant to a Writ of Fifa "what property [the garnishee] has in his possession or under his control belonging to the judgment debtor and in what amount he is indebted to him, even though the debt may not be due."[19] Seizure takes "effect upon service of the petition, citation, interrogatories, and a notice of seizure, as required by [La. C.C.P. art.] 2412(A)(1)."[20] On the date the Garnishment was served, September 18, 2014, Savoy had in its possession and control (1) Savoy's rights under the Savoy Contract and (2) the royalties that KPD had already earned due to sales of products.[21]

---

[17] *Id.*

[18] The Garnishment was served on KPD on September 18, 2013, and the ninety day preference period began on September 21, 2013.

[19] La. C.C.P. art. 2411(A).

[20] La. C.C.P. art. 2411(B)(1).

[21] The Savoy Contract provides that royalties are "deemed earned upon the sale of the Product." Exh. 4, Savoy Contract, p. 7.

### 1. Rights pursuant to the Savoy Contract

As admitted by KPD, incorporeal movables, such as contract rights, are subject to seizure.[22] However, Savoy did not possess *KPD's rights* under the Savoy Contract. Savoy does not have a right to royalties; it has an obligation to pay royalties. KPD's royalty rights under the Savoy Contract are held by KPD, not Savoy. Therefore, KPD's rights under the Savoy Contract could not be seized by Garnishment served on Savoy.

Instead KPD's rights under the Savoy Contract could only be seized through a writ issued and served upon KPD. This was done, but as stated *supra*, the parties stipulated that the seizure served on KPD was within the ninety day preference period and subject to avoidance.

Sacco contends that since the Judgment on the Motion to Traverse Garnishment Interrogatories[23] provides that the seizure is "continuing," he is entitled to seize royalties rights as they become due to KPD even after the Garnishment was served on Savoy. The Judgment on the Motion to Traverse Garnishment Interrogatories did not find that KPD's royalty rights in the Savoy Contract were seized. This Court finds that KPD's contract rights to royalties were never seized.

### 2. Royalties Due on the Date the Garnishment Was Served

> Other than as provided in La. R.S. 13:3921 *et seq.* applicable to garnishment of wages, a garnishment shall not be continuing in nature and the garnishee need only respond as to property of the judgment debtor that the garnishee has in his possession or under his control at the time the garnishment interrogatories are served on him.[24]

---

[22] *See* La. C.C.P. art. 2411 and 5251(13); *see also* P-67, p. 8.

[23] Exh. 3.

[24] La. C.C.P. art. 2411(C).

Louisiana law provides that only funds in the hands of a third party that are "unconditionally due and owing" to the debtor are subject to garnishment.[25]

In *A.F. Blair Co., Inc. v. Mason*, a contractor was paid monthly progress payments upon application for payment which could cover work completed up to two days prior to the application. The Court ruled that a judgment creditor was entitled to seize by garnishment the funds held by a third party for which application had already been made by the contractor because the conditions making them due had been satisfied.

Funds which are only conditionally due are not subject to seizure. In *Cagle Supply of Lafayette, Inc. v. Hinson*,[26] a judgment creditor sought to garnish amounts due to a subcontractor from the general contractor. According to the contract between the subcontractor and general contractor, payments to the subcontractor were contingent upon him "settling all claims for labor and materials."[27] The subcontractor had not settled those claims. The Court found that because the condition had not been satisfied, there were no amounts due to the subcontractor that could be garnished.

Therefore, only funds unconditionally owed to KPD by Savoy on September 18, 2013, were subject to garnishment, and Sacco acquired a security interest in only those funds. This includes royalties for products sold as of September 18, 2013, because the Savoy Contract provides that royalties are "deemed earned upon the sale of the Product."

---

[25] *A.F. Blair Co., Inc. v. Mason*, 406 So.2d 6 (La.App. 1 Cir. 1981); *see also Sisalcords do Brazil, Ltd. v. Fiacao Brasileira de Sisal, S.A.*, 450 F.2d 419 (5th Cir. 1971).

[26] *Cagle Supply of Lafayette, Inc. v. Hinson*, 155 So.2d 773 (La.Ap. 3 Cir. 1963).

[27] *Id*. at 775.

Sacco cited *de la Vergne v. de la Vergne*[28] for the proposition that royalties, like rental income, could be seized from a third party even though not yet due pursuant to La. C.C.P. art. 2411. Rental income is distinguishable from royalties, however. In *de la Vergne*, the Court found:

> Absent notice of any intent to break the leases, rent is due monthly on the premises. Based on the record before us, the Court finds no evidence of any contingent rents.

The rent in *de la Vergne* was unconditionally due each month. On the other hand, the royalties are contingent on sale of products by Savoy.

Sacco also compared seizure of royalties to garnishment of wages, which may be seized from an employer on a continuing basis. The continuing nature of a garnishment of wages is specifically provided for in La. C.C.P. art. 2411(C) and La. R.S. 13:3921 *et seq*. Thus, the garnishment of wages cannot compare to the garnishment of royalty rights. Further, Sacco cited no cases to support his position.

### III. Conclusion

The Motion for Turnover is granted, and Sacco must turn over to KPD all KPD property that is in its possession. The Court will also direct the Sheriff of Orleans Parish to turn over all of KPD's property in his possession. However, because Sacco's Garnishment occurred on September 18, 2013, and was more than ninety days prior to KPD's filing for bankruptcy relief on December 20, 2013, Sacco has a lien on the funds or royalties due to KPD on September 18, 2013, and is entitled to adequate protection.

New Orleans, Louisiana, February 19, 2014.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[28] *de la Vergne v. de la Vergne*, 662 So.2d 32, 92-235 (La.App. 5 Cir. 9/26/95).